RULEY, JUDGE:
These consolidated cases grow out of a single vehicle accident which happened on Nellis Road between Ashford and W.Va.-U.S. Route 119 about one-half mile from the top of Len’s Creek Mountain in Boone County, West Virginia, at about 7:30 A.M. on Saturday, June 16, 1973. At that time and place, the claimant, Elfa Mae Barker, was driving a 1965 model Chevrolet owned by her husband, William F. Barker, on her way from their home to Ashford to a bus station in Charleston. Their daughter, the. claimant, Joyce Elaine Barker, then 18, was riding as a passenger in the right front seat. Elfa Mae Barker and Joyce Elaine Barker assert claims for damages for personal injuries and William F. Barker asserts a claim for property damage to the vehicle and loss of the “society and comfort” of his wife.
In the vicinity of the place where the accident happened, the respondent had been engaged in construction consisting of widening the berm along Nellis Road for a substantial time, perhaps as much as two or three months, before the accident happened. This work involved excavation into the hillside or embankment (which contained a seam or vein of rock) along the road, loading the excavated material by an endloader into dump trucks and hauling it away to various dumping sites. The travelled portion of Nellis Road was paved with a blacktop surface and accommodated two traffic lanes. As it ascended the mountain from *188 Ashford, .it contained several curves but it was substantially straight for several hundred feet in the vicinity of the place where the accident happened. As she approached that place and in proximity to it, Mrs. Barker passed successively highway signs which she testified that she saw and read which warned “Slippery When Wet” and “Road Under Construction”. She was traveling upgrade, on a grade estimated to be about five percent, at a speed of about forty miles per hour. The surface of the pavement was dry until she reached the place where the accident happened. Mrs. Barker testified that, as she approached that place, she saw a substance which looked to her like water “across the road” at a distance of about 100 feet and that she then “let up on the gas”. After the vehicle entered that substance, it slid and spun around, leaving the pavement and traveling across the berm and into collision with the seam of rock, causing both Mrs. Barker and her daughter to be thrown into its windshield. At the time and place of the accident, there was no other vehicular traffic in sight on Nellis Road.
There is no doubt that the accident happened and that the injuries and damages claimed resulted from it but the cause of the accident, upon the evidence before the Court, is left to conjecture and speculation. And, of course, in making such a determination of fact this Court has no more right to speculate or guess than does a jury. Apparently there was some substance on the pavement which caused the vehicle to slide, although the evidence is in conflict on that point ranging in its extremes from the testimony of one witness for the claimants, who arrived at the scene of the accident shortly after it happened, to the efféct that there was mud from one to two inches thick covering both sides of the pavement for a distance of about 1,000 feet to the testimony of two witnesses for the respondent, who arrived at the scene about one hour after the accident, that there then was no mud or any other substance on the pavement. The claimants made an effort to prove through one witness, Larry Kenneth Garretson, that the respondent had put calcium chloride on the road surface and that it had caused it to become slippery but that effort collapsed when he testified, on cross examination:
“Q Now, when you testified previously I thought you said you thought the slick substance looked like mud; is that correct?
A Well, it had rained that morning and it was wet and yellow clay mud on the road. It was muddy.
*189 Q So it was not calcium?
A Well, it was mud. That’s all I can say. I don’t know what all was in it then. The calcium had been used on it to séttle the dust. I say that.
Q Could those bags have contained anything else besides calcium?
A Yes, they could.”
And this conclusion is inevitable particularly in view of the testimony of the witnesses for the respondent to the effect no calcium chloride or any other chemical compound had been used by the respondent. The respondent’s witnesses also testified — and it was undisputed — that the pavement in the vicinity of the construction was cleaned at the end of every day’s work. In sum, while it may be apparent that there was some substance on the pavement which caused the Barker vehicle to slide, there is no evidence that its presence there was caused by negligence on the part of the respondent. That ultimate conclusion could be reached only by speculation and conjecture and, accordingly, this Court has no alternative but to deny these claims.
Claims disallowed.